**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALBERT HUGHES, III, | |
| Plaintiff, | CIVIL ACTION NO. 3:CV-14-1839 |
| v. | (JUDGE CAPUTO) |
| MARIE BADARACCO-APOLITO and HENDRICK BARNER, | |
| Defendants. | |

**MEMORANDUM**

Presently before me are three motions: Defendant Marie Badaracco-Apolito's ("Badaracco-Apolito") Motion to Dismiss Counts II and III and Strike Impertinent and Scandalous Averments from Plaintiff Albert Hughes' ("Hughes") Amended Complaint (Doc. 16); Defendant Hendrick Barner's ("Barner") Motion to Dismiss Count III of Hughes' Amended Complaint (Doc. 22); and Hughes' Motion for Leave to File Amended Pleading/Second Amended Complaint. (Doc. 26.) For the reasons that follow, Badaracco-Apolito's motion will be granted in part and denied in part, Barner's motion will be granted, and Hughes' motion will be denied.

**I. Background**

Hughes commenced this action against Badaracco-Apolito and Barner (collectively, "Defendants") by complaint docketed on September 22, 2014. (Doc. 1.) In the complaint, Hughes asserted a strict liability claim against Badaracco-Apolitio, as well as claims for negligence and punitive damages against both Defendants for injuries he allegedly sustained after he was attacked by two dogs they owned and/or controlled. Badaracco-Apolito moved to dismiss the strict liability and punitive damages claims and to strike impertinent and scandalous averments on October 23, 2014. (Doc. 9.)

The next day, Hughes filed an Amended Complaint as a matter of course. (Doc. 14.)

The Amended Complaint again asserted claims against Defendants for negligence and punitive damages, and, in addition, Hughes set forth a negligence *per se* claim against Badaracco-Apolito in place of the strict liability claim raised in the initial complaint.

The facts as set forth in the Amended Complaint are as follows:

On or about February 17, 2013, Hughes was with his family, a guest, and his own dog at or near Pioneer Trail, Pocono Pines in Monroe County, Pennsylvania. (*Am. Compl.*, ¶ 8.) There, Hughes was suddenly attacked and mauled by two unleashed German Shepherds. (*Id.*) The dogs are owned by Badaracco-Apolito and had been let out of her house by Barner with her knowledge, permission, and consent. (*Id*. at ¶ 9.) Prior to the attack, Defendants failed to leash and properly control the dogs. (*Id*. at ¶ 10.) Barner is a senior citizen with "difficulty hearing and walking, and is frail, and was not in a condition and position to safely control the German Shepherd dogs," (*Id*. at ¶ 22), and under those circumstances, Badaracco-Apolito should not have allowed Barner to handle and secure the dogs outside of her house. (*Id*. at ¶ 24.) The night before the attack Barner let the dogs out of Badaracco-Apolito's house without a leash. (*Id*. at ¶ 23.)

As a result of the incident, Badaracco-Apolito was charged with two counts of violating Pennsylvania's Dog Law: Failure to Confine Dogs and Harboring Dangerous Dogs. (*Id*. at ¶ 11.) Badaracco-Apolito proceeded to trial on the charges and was found guilty of violating §§ 502-A and 305 of the Dog Law by a magisterial district judge. (*Id*. at ¶ 12.) Badaracco-Apolito filed an appeal, but the appeal was later withdrawn. (*Id*. at ¶ 13.)

On October 31, 2014, Badaracco-Apolito filed a motion to dismiss the negligence *per se* and punitive damages claims and to strike impertinent and scandalous averments from the Amended Complaint. (Doc. 16.) Barner also moved to dismiss Hughes' claim for punitive damages. (Doc. 22.)

On November 17, 2014, Hughes, pursuant to Federal Rule of Civil Procedure

15(a)(2), filed a motion for leave to file a second amended complaint. (Doc. 26.) Hughes requested leave to amend his pleading to set forth claims for negligence and punitive damages against Defendants, as well as negligence *per se* and strict liability claims against Badaracco-Apolito. After briefing on the motion for leave to amend was closed, Hughes requested oral argument on his motion. (Doc. 29.) The request was granted, and oral argument was held on January 22, 2015. The parties' motions are now ripe for disposition.

## II. Discussion

### A.     12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint

must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has

4

attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196.  The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.     The Motions to Dismiss the Amended Complaint**

As noted, Badaracco-Apolito moves to dismiss Hughes' negligence *per se* claim and to strike scandalous and impertinent averments from the Amended Complaint.  Additionally, both Defendants seeks dismissal of the punitive damages claim in Count III of the Amended Complaint.

**1.     Negligence *Per Se***

In order to state a claim based on negligence *per se*, four requirements must be met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1058-59 (Pa. Super. 2003) (citations and quotations omitted); *see also Roth v. Cabot Oil & Gas Corp.*, 919 F. Supp. 2d 476, 488 (M.D. Pa. 2013).  "The concept of 'negligence *per se*' establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm." *Mahan*, 841 A.2d at 1058 (citing *J.E.J. v. Tri-County Big Brothers/Big Sisters*, 692 A.2d 582, 585 (Pa. Super. Ct. 1997)).

Based on the allegations in the Amended Complaint, Hughes sufficiently alleges the

requirements to proceed on a negligence *per se* theory of liability.  First, Hughes adequately alleges a statute applicable to Badaracco-Apolito's conduct, the Pennsylvania Dog Law. *See* 3 P.S. § 459-101. (*Am. Compl.*, ¶ 16-19.)  This statute was enacted "to protect the public from personal injury, property damage, and other hazards created by roving dogs." *Deardorff v. Burger*, 606 A.2d 489, 492 (Pa. Super. Ct. 1992).  Hughes also sufficiently alleges that the Dog Law applies to Badaracco-Apolito and that she violated § 305(a)[1] and § 502-A(a)[2] of the statute.  Accordingly, Hughes' allegations are sufficient to proceed with

---

[1] Section 305(a) makes it is unlawful for the owner or keeper of any dog from failing to keep the dog at all times: "(1) confined within the premises of the owner; (2) firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured; or (3) under the reasonable control of some person, or when engaged in lawful hunting, exhibition, performance events or field training." 3 P.S. § 459-305(a).

[2] Section 502-A(a), which addresses the summary offense of harboring a dangerous dog, states:
> Any person who has been attacked by one or more dogs . . . may file a complaint before a magisterial district judge, charging the owner or keeper of the a dog with harboring a dangerous dog.  The owner or keeper of the dog shall be guilty of the summary offense of harboring a dangerous dog if the magisterial district judge finds beyond a reasonable doubt that the following elements of the offense have been proven:
> (1) The dog has done any of the following:
> (i) Inflicted severe injury on a human being without provocation on public or private property.
> (ii) Killed or inflicted severe injury on a domestic animal, dog or cat without provocation while off the owner's property.
> (iii) Attacked a human being without provocation.
> (iv) Been used in the commission of a crime.
> (2) The dog has either or both of the following:
> (i) A history of attacking human beings and/or domestic animals, dogs or cats without provocation.
> (ii) A propensity to attack human beings and/or domestic animals, dogs or cats without provocation. A propensity to attack may be proven by a single incident of the conduct described in paragraph (1)(i), (ii), (iii) or (iv).
> (3) The defendant is the owner or keeper of the dog.

3 P.S. § 459-502-A(a).

his negligence *per se* claim.

But, insofar as Hughes suggests that Badaracco-Apolito was negligent *per se* solely based on her convictions for violating the Dog Law, he is incorrect in two respects. First, "a mere violation of the Dog Law does not establish the causation factor required for a finding of liability." *Underwood ex rel. Underwood v. Wind*, 954 A.2d 1199, 1205 (Pa. Super. Ct. 2008). Instead, "[w]here proof of negligence rests upon a violation of the Dog Law, liability does not attach unless the violation is a substantial factor in bringing about the injuries sustained," and this issue "will normally be for the trier of the facts." *Miller v. Hurst*, 448 A.2d 614, 619 (Pa. Super. Ct. 1982), *superseded on other grounds as recognized in Billig v. Skvarla*, 853 A.2d 1042, 1046-48 (Pa. Super. Ct. 2004). Thus, only "an unexcused violation of the Dog Law is negligence *per se*." *Miller*, 448 A.2d at 618-19; *see also Villaume v. Kaufman*, 550 A.2d 793, 795 (Pa. Super. Ct. 1988). Second, "convictions for summary offenses by themselves, where an accused is not entitled to a jury trial, are inadmissible" for collateral estoppel purposes in a subsequent civil suit. *Folino v. Young*, 568 A.2d 171, 173-74 (Pa. 1990). As such, because "section 459-502-A clearly defines harboring a dangerous dog as a violation of the Dog Law, but as a summary offense only . . . . it is inadmissible for collateral estoppel purposes." *Toolan ex rel. Toolan v. Cerulli*, 81 Pa. D. & C. 4th 225, 232 (Pa. Ct. Com. Pl. Monroe Cnty. Dec. 14, 2006).

I will not, however, grant Badaracco-Apolito's request to strike the allegations relating to her convictions for harboring dangerous dogs from the Amended Complaint. Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to be stricken

7

bears no possible relationship to the controversy and may cause prejudice to one of the parties.  *See Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 133 (E.D. Pa. 2007).  While a trial court has considerable discretion in whether to grant or deny such a motion, they are "highly disfavored" and should only be granted "when 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 520 (E.D. Pa. 2011) (quoting *N. Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994)).

Here, Badaracco-Apolito contends that the allegations relating to the criminal proceedings are an impermissible attempt to advance a strict liability claim in this litigation, and that by the "mere mention" of these proceedings she will be "greatly prejudiced." (Doc. 17, 11-14.)  While these proceedings may well be irrelevant to this litigation for the reasons previously stated, I do not see such a great potential for prejudice that would warrant excising these allegations.  Of course, the admissibility of such evidence at trial is a wholly different matter.  Today, however, the potential for prejudice or confusion is not sufficiently high as to warrant the striking of these allegations.  Therefore, Badaracco-Apolito's request to strike will be denied.

### 2. Punitive Damages

In Count III of the Amended Complaint, Hughes seeks to recover punitive damages from both Defendants.  Defendants move to dismiss the punitive damage request on the basis that the allegations in the Amended Complaint fail to rise to the level that would support such an award.

The standard for awarding punitive damages under Pennsylvania law is well-established:

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others . . . [a]s the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.

*Hutchinson v. Lundy*, 870 A.2d 766, 770 (Pa. 2005). While ordinary negligence will not

8

support an award of punitive damages, "punitive damages are appropriate for torts sounding in negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured." *Id*. (internal citation omitted).

The thrust of Hughes' request for punitive damages is: (1) Barner is a frail senior citizen that has difficulty hearing and walking; (2) the night before the incident Barner let the dogs out without a leash; and (3) Badaracco-Apolito should not have allowed Barner to handle and secure the dogs outside of her home. (*Am. Compl.*, ¶¶ 22-24.)  As a result, Hughes concludes that Defendants' conduct was outrageous, wanton, and/or with reckless indifference to his safety. (*Id*. at ¶ 25.)

The allegations in the Amended Complaint fail to set forth sufficient facts which would justify a punitive damage award.  Essentially, as alleged in the Amended Complaint, Hughes' claims are based on Defendants' failure to properly leash and control two German Shepherds.  While these allegations are sufficient to support a claim of negligence, they fail to allege any willful, wanton, or reckless conduct on behalf of either Defendant.  Thus, on the facts set forth in the Amended Complaint, Hughes fails to allege conduct by Defendants warranting the imposition of punitive damages. *See, e.g., Boring v. Google Inc.*, 362 F. App'x 273, 282 (3d Cir. 2010) ("punitive damages cannot be based upon ordinary negligence"); *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983-84 (Pa. Super. Ct. 2005) ("Ordinary negligence, involving inadvertence, mistake or error of judgment will not support an award of punitive damages.").  Accordingly, the punitive damages claim in Count III of the Amended Complaint will be dismissed.

**C.    The Motion for Leave to Amend**

Lastly, Hughes seeks leave to amend to assert a strict liability claim against Badaracco-Apolito. Because Hughes has already amended his pleading in this action once as a matter of course, the proposed amendment is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure.  Rule 15(a)(2) states: "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely

give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  But, "[t]he policy favoring liberal amendment of pleadings is not . . . unbounded." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990).  Whether to grant or deny a motion for leave to amend lies within the discretion of the district court. *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).  "[A] district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005).

Hughes argues that leave to amend is justified pursuant to *Commonwealth v. Raban*, 85 A.3d 467 (Pa. 2014).  In *Raban*, the Pennsylvania Superior Court concluded that a conviction under § 305(a)(1) of the Dog Law does not require proof of scienter. *See Commonwealth v. Raban*, 31 A.3d 699, 702 (Pa. Super. Ct. 2011).  The Order of the Superior Court was affirmed on appeal by the evenly divided Pennsylvania Supreme Court. See *Commonwealth v. Raban*, 85 A.3d 467, 467 (Pa. 2014).  Three Justices of the evenly divided Court indicated that they would affirm the Superior Court on the basis that § 305(a)(1) is an absolute liability offense, while the other three participating Justices stated that they would reverse the determination of the Superior Court because § 305(a)(1) is not an absolute liability offense. *See Raban*, 85 A.3d at 467, 472, 473.[3]  Hughes contends that in light of *Raban* he may advance a strict liability cause of action against Badaracco-Apolito in this civil litigation for injuries he allegedly sustained when he was attacked by her dogs.

Hughes' request to file a second amended complaint will be denied because the proposed amendment is futile.  As stated, *Raban* addressed whether a violation of §

---

[3] Because the Pennsylvania Supreme Court in *Raban* was evenly divided, the opinions in support of affirmance have no precedential value. *See, e.g., Shirey v. Giroux*, No. 11-1693, 2014 WL 5825309, at *3 n.7 (M.D. Pa. Nov. 10, 2014) ("an opinion of an evenly divided Pennsylvania Supreme Court has no precedential value"); *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217 n.16 (Pa. Super. Ct. 2012) (Since the [Supreme] Court was divided evenly, this opinion does not have precedential value, although it has persuasive value.").

305(a)(1) is an absolute liability offense. Nothing in *Raban*, in the Superior Court or Supreme Court opinions, suggests that owners of dogs are strictly liable in tort for damages caused by their dogs. Indeed, as stated by the Pennsylvania Superior Court six months after its holding in *Raban*, "Pennsylvania, however, does not impose absolute liability upon dog owners for injuries occasioned by their dogs. Proof of the owner's negligence is required." *Rosenberry v. Evans*, 48 A.3d 1255, 1258 (Pa. Super. Ct. 2012) (citing *McCloud v. McLaughlin*, 837 A.2d 541 (Pa. Super. Ct. 2003)). In other words, "'proof of negligence, in contrast to holding one absolutely liable, is the vehicle by which accountability for injury sustained because of a dog bite is to be established.'" *McCloud*, 837 A.2d at 544 (quoting *Deardorff v. Burger*, 606 A.2d 489, 493 (Pa. Super. Ct. 1992)). Accordingly, because Pennsylvania law does not impose absolute or strict liability in tort against dog owners for damages caused by their dogs, the proposed amendment seeking to assert a strict liability claim against Badaracco-Apolito is futile.

### III. Conclusion

For the above stated reasons, Badaracco-Apolito's motion to dismiss will be granted in part and denied in part, Barner's motion to dismiss will be granted, and Hughes' motion for leave to amend will be denied.

An appropriate order follows.

February 17, 2015  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge