**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**ALBERT HUGHES, III**,

      Plaintiff,

           v.

**MARIE BADARACCO-APOLITO and
HENDRICK BARNER**,

      Defendants.

CIVIL ACTION NO. 3:14-CV-1839

(JUDGE CAPUTO)

## MEMORANDUM

      Presently before me are two motions: Plaintiff Albert Hughes III's ("Hughes") Motion for Summary Judgment (Doc. 51) and Defendant Marie Badaracco-Apolito's ("Badaracco-Apolito") Motion for Summary Judgment (Doc. 56). Because Hughes has failed to demonstrate that he is entitled to judgment as a matter of law on his claims, I will deny his motion. I will also deny Badaracco-Apolito's motion because reasonable minds could differ as to whether her actions as the owner of the dogs were reasonable.

### I. Background

      Hughes commenced this action against Badaracco-Apolito and Hendrick Barner ("Barner") (collectively "Defendants") by filing a complaint on September 22, 2014. (Doc. 1) In the initial complaint, Hughes asserted a strict liability claim against Badaracco-Apolitio, as well as claims for negligence and punitive damages against both Defendants for injuries he allegedly sustained after he was attacked by two dogs they owned and/or controlled. The next day, Hughes filed an Amended Complaint as a matter of course. (Doc. 14)  The Amended Complaint again asserted claims against Defendants for negligence and punitive damages, and, in addition, Hughes set forth a negligence *per se* claim against Badaracco-Apolito in place of the strict liability claim raised in the initial complaint.

      I previously decided that the claims for punitive damages against both Defendants were to be dismissed with prejudice. (Docs. 32-33) Following my ruling, on March 16, 2015, Barner filed an answer to the Amended Complaint and a cross-claim against Badaracco-Apolito. (Doc. 34) On March 27, 2015, Badaracco-Apolito also filed an answer to the

Amended Complaint and a cross-claim against Barner. (Doc. 35) On March 27, 2015, Badaracco-Apolito filed an answer to Barner's cross-claim against her. (Doc. 36) On May 5, 2015, Barner filed an answer to Badaracco-Apolito's cross-claim against him. (Doc. 43) Hughes now moves for summary judgment on Counts I and II of the Amended Complaint asserting that he is entitled to judgment as a matter of law with regard to negligence and factual causation. (Doc. 51, 8.) He asserts that the determination of damages should be left to a jury. (*Id.* at 5.)

Badaracco-Apolito also requests that summary judgment be granted in her favor because she argues that Hughes has failed to prove she is liable for Hughes's injuries based on either negligence or negligence per se. (Doc. 56, ¶ 10.)

The facts underlying this action are largely uncontested.[1]

---

[1]   I will only refer to Hughes's Statement of Material Facts (Doc. 51) unless the fact is disputed by Defendants, or, alternatively, to Badaracco-Apolito's Statement of Facts (Doc. 57) unless the fact is disputed by Hughes or Barner. I note Hughes's and Barner's failure in their responsive statement of material facts to comply with Local Rule 56.1 of the United States District Court for the Middle District of Pennsylvania which provides:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, will be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried, The papers opposing a motion for summary judgment will include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion will include material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

M.D. Pa. Local R. 56.1. "The purpose of this rule is obvious: it enables the court to identify contested facts expeditiously and prevents factual disputes from becoming obscured by a lengthy record." *Pinegar v. Shinseki,* 2009 WL 1324125 (M.D.Pa. May 12, 2009). Both Hughes and Barner chose to submit a "Counter Statement of the Facts" as opposed to a response to the asserted facts of Hughes or Badaracco-

On February 17, 2013, the Hughes family was out for a walk near Badaracco-Apolito's home. (*Hughes's Statement of Material Facts "Hughes's Statement"*, Doc. 51, ¶ 3.) The Hughes family dog was also present and on a leash. (*Hughes's Statement* at ¶ 4.) Hughes was coming down his driveway approximately 100 yards away from his family when he saw two German Shepherds jumping around his family. (*Id*. at ¶ 5.) The two unleashed German Shepherds, owned by Badaracco-Apolito, had been let out of her house by Barner, who was a house guest of Bardacco-Apolito. (*Id*. at ¶¶ 1, 2.) Hughes then ran down the street. (*Id.*) The German shepherds attacked and bit Hughes's dog. (*Id*. at ¶ 4.) As Hughes approached, his dog was under a pine tree but ran out to him. (*Id.* at ¶ 5.) Hughes reached down to pick up his dog when Hughes was bitten by one German shepherd on his wrist, dragging him to the ground, then was bitten on the left ankle by the other German Shepherd. (*Id.* at ¶ 5.) The parties dispute what Hughes was doing prior to when the German Shepherds bit him. (*Badaracco-Apolito's Counterstatement "Badaracco-Apolito's Counter"*, Doc. 62, ¶ 5; *Barner's Counterstatement of Facts* ("*Barner's Counter*"), Doc. 60, ¶¶ 28-29.) Sophia Xargay, a friend accompanying the Hughes family, testified that Hughes may have "yelled at [the German Shepherds] and waived his arms in an attention-grabbing manner, but not in an aggressive way," successfully gaining "the attention of the dogs" and "they chased after him, away from [the family]." (Doc. 63, 3-4; Doc. 64, 6.) The male German Shepherd bit Hughes's arm/wrist and the female German Shepherd bit Hughes's ankle.  (*Hughes's Statement* at ¶ 7.)

As a result of the attack, Hughes suffered permanent injury as evidenced by reports of his doctors Dr. Bozentka[2] and Dr. Osterman, yet Badaracco-Apolito contests the injuries and their permanency. (*Hughes's Statement* at ¶ 6; *Badaracco-Apolito's Counter* at ¶ 6.)

---

Apolito. I have reviewed the opposing statements and set forth what has been admitted or deemed admitted.

[2]      Hughes fails to attach a report from Dr. Bozentka to his Motion for Summary Judgment. There was, however, a narrative report from Dr. Osterman attached to the motion. (Doc. 51, 86-89.)

Badaracco-Apolito was charged with two (2) counts of violating Pennsylvania's Dog Law 3 P.S. §§ 459-101, *et. seq.* ("Dog Law"): one (1) count Failure to Confine Dogs, 3 P.S. § 459-305[3], and one (1) count Harboring Dangerous Dogs, 3 P.S. § 450-502-A[4]. (*Hughes's Statement* at ¶ 7.) Badaracco-Apolito proceeded to trial on the charges and was found guilty of violating sections 305 and 502-A of the Dog Law by a magisterial district judge. (*Id*. at ¶ 15.) The time frame for Badaracco-Apolito to appeal has run. (*Id*.)

Badaracco-Apolito described her male dog as "kind of feisty" and, at times, she would use a collar with prongs because the dog was very strong and very intense, or, stated

---

[3] **"(a) Confinement and control.--**It shall be unlawful for the owner or keeper of any dog to fail to keep at all times the dog in any of the following manners: (1) confined within the premises of the owner; (2) firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured; or (3) under the reasonable control of some person, or when engaged in lawful hunting, exhibition, performance events or field training." 3 P.S. § 459-305(A).

[4] Section 502-A(a), which addresses the summary offense of harboring a dangerous dog, states:

> Any person who has been attacked by one or more dogs . . . may file a complaint before a magisterial district judge, charging the owner or keeper of the a dog with harboring a dangerous dog. The owner or keeper of the dog shall be guilty of the summary offense of harboring a dangerous dog if the magisterial district judge finds beyond a reasonable doubt that the following elements of the offense have been proven:
> (1) The dog has done any of the following:
> (i) Inflicted severe injury on a human being without provocation on public or private property.
> (ii) Killed or inflicted severe injury on a domestic animal, dog or cat without provocation while off the owner's property.
> (iii) Attacked a human being without provocation.
> (iv) Been used in the commission of a crime.
> (2) The dog has either or both of the following:
> (i) A history of attacking human beings and/or domestic animals, dogs or cats without provocation.
> (ii) A propensity to attack human beings and/or domestic animals, dogs or cats without provocation. A propensity to attack may be proven by a single incident of the conduct described in paragraph (1)(i), (ii), (iii) or (iv).
> (3) The defendant is the owner or keeper of the dog.
> 3 P.S. § 459-502-A(a).

another way, very muscular and very powerful. (*Hughes's Statement* at ¶ 9; *Badaracco-Apolito's Counter* at ¶ 9.) The male dog would get excited at the sight of other dogs when being walked and "would tend to bark and sometimes pull." (*Id.*) Bardacco–Apolito walked her dogs separately because one of her prior dogs pulled its leash out of her hands while on a walk in order to greet an approaching neighbor's dog, resulting in a fracture to her hand. (*Id.*)

Badaracco-Apolito emphatically told Barner not to let her dogs out of the house without a leash. (*Hughes's Statement* at ¶ 17.) Barner, despite acknowledging he was told not to let the dogs out without leashes, let the dogs out on the night of February 16, 2013 and on February 17, 2013, the day of the attack, without leashes. (*Hughes's Statement* at ¶¶ 18-19; *Badaracco-Apolito's Counter* at ¶¶ 18-19.) On February 17, 2013, Barner took the dogs into the garage without leashes, opened the garage door and the dogs ran off while Badaracco-Apolito was getting ready for church and may have been in the shower. (*Hughes's Statement* at ¶¶ 20, 22.) Barner stated he used poor judgment in letting the dogs out. (*Hughes's Statement* at ¶ 21.)

On December 7, 2014, Hughes filed a statement of material facts, a motion for summary judgment and a brief in support. (Doc. 51) Hughes requests that summary judgment be granted in his favor as to liability and causation, with the question of damages being left to a jury. (Doc. 51, 5 ¶ 1.) On December 31, 2015, Badaracco-Apolito also filed a motion for summary judgment (Doc. 56) and a statement of material facts (Doc. 57). She filed a brief in support on January 4, 2016. (Doc. 58) On January 7, 2016, Barner filed a brief in opposition to Hughes's motion for summary judgment. (Doc. 60) Badaracco-Apolito filed a brief in opposition to Hughes's motion for summary judgment on January 7, 2016. (Doc. 61) Badaracco-Apolito also filed a response to Hughes's statement of material facts on January 7, 2016. (Doc. 62) On January 19, 2016, Barner filed a brief in opposition to Badaracco-Apolito's motion for summary judgment (Doc. 60) and Hughes filed a counter statement of facts and a brief in opposition to Badaracco-Apolito's motion for summary

judgment (Doc. 60). On February 2, 2016, Badaracco-Apolito filed responses to the briefs filed in opposition to her motion for summary judgment.[5] (Docs. 67-68) The parties' motions are now ripe for disposition.

## II. Discussion

### A.      Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996).  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.  Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Denal Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010).  The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient

---

[5]      I construe the responses as reply briefs pursuant to Middle District Local Rule 7.7.

showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).   Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57, 106 S. Ct. 2505. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)).   "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)).   In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505.

This case is before me as a diversity action pursuant to 28 U.S.C. § 1332. "A federal court sitting in diversity must apply state substantive law and federal procedural law." *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Therefore, Pennsylvania negligence law applies. *See Zarek v. Fredericks*, 138 F.2d 689, 690 (3d Cir. 1943) ("Federal

jurisdiction is invoked because of diversity of citizenship, but the question of defendant's liability is purely one of Pennsylvania law, and, therefore, governed, so far as applicable, by the decisions of the Pennsylvania courts.").

### B.    Hughes's Motion for Summary Judgment

Count I of Hughes's Amended Complaint alleges common law negligence against both Badaracco-Apolito and Barner. (Doc. 14) Count II of Hughes's Amended Complaint alleges negligence *per se* against Badaracco-Apolito. (*Id.*) As noted, Hughes seeks summary judgment with regard to causation and liability on his claims against Badaracco-Apolito and Barner. (Doc. 51) Both Badaracco-Apolito and Barner oppose Hughes's request. (Docs. 60-61)

"Generally, it is the animal's owner that is responsible for injuries to others caused by his or her pet." *Dick v. Detwiler*, 7 Pa. D. & C.4th 629, 631 (Com. Pl. 1990) (citing *Miller v. Hurst,* 302 Pa. Super. 235, 448 A.2d 614 (1982) *superseded on other grounds as recognized in Billig v. Skvarla*, 853 A.2d 1042, 1046-48 (Pa. Super. Ct. 2004); *Villaume v. Kaufman,* 379 Pa. Super. 561, 550 A.2d 793 (1988)). However, "Pennsylvania,. . . does not impose absolute liability upon dog owners for injuries occasioned by their dogs. Proof of the owner's negligence is required." *Rosenberry v. Evans*, 48 A.3d 1255, 1258 (Pa. Super. Ct. 2012) (citing *McCloud v. McLaughlin*, 837 A.2d 541 (Pa. Super. Ct. 2003)).  In other words, "'proof of negligence, in contrast to holding one absolutely liable, is the vehicle by which accountability for injury sustained because of a dog bite is to be established.'" *McCloud*, 837 A.2d at 544 (quoting *Deardorff v. Burger*, 606 A.2d 489, 493 (Pa. Super. Ct. 1992)).

### 1.    Badaracco-Apolito

Hughes contends he is entitled to summary judgment against Badaracco-Apolito with regard to negligence/factual cause and asserts that "there is no issue as to her negligence as owner of the dogs." (Doc. 51, 9.) Hughes further asserts because she was found to have violated the Pennsylvania Dog Law, Badaracco-Apolito is collaterally estopped[6] from

---

6

"The doctrine of 'collateral estoppel' or issue preclusion prevents a question of law or an issue of fact that has been litigated and fully adjudicated in a court of competent

asserting that she did not harbor dogs with dangerous propensities and thus is negligent per se. (*Id.*) Hughes states that the conviction operates as collateral estoppel because:

> the finding by the Magistrate established beyond a reasonable doubt by the principle of collateral estoppel that the dogs had dangerous propensities, <u>Shaffer v. Smith</u>, 543 Pa. 526, 673 A. 2d 872 and thus the owner is liable civilly when the dogs attacked and then bit the plaintiff. <u>Andrews v. Smith</u>, 324 Pa. 455, 188 A. 146 (1936).[7]

(*Id.*) Badaracco-Apolito responds that she cannot, as Hughes asserts, "be found as a matter of law, negligent strictly because she was the owner of the dogs." (Doc. 61, 5.)

Hughes's claim in Count II is for negligence *per* se. (Doc. 14) In order to state a claim based on negligence *per se*, four requirements must be met:

> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally; (2) The statute or regulation must clearly apply to the conduct of the defendant; (3) The defendant must violate the statute or regulation;   (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1058-59 (Pa. Super. 2003) (citations and quotations omitted); *see also Roth v. Cabot Oil & Gas Corp.*, 919 F. Supp. 2d 476, 488 (M.D. Pa. 2013). "The concept of 'negligence *per se*' establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm." *Mahan*, 841 A.2d at 1058 (citing *J.E.J. v. Tri-County Big Brothers/Big Sisters*, 692 A.2d 582, 585 (Pa. Super. Ct. 1997)). The Dog Law was enacted

---

jurisdiction from being relitigated in a subsequent suit." *Shaffer v. Smith*, 436 Pa. Super. 411, 414, 648 A.2d 26, 28 (1994) *aff'd*, 543 Pa. 526, 673 A.2d 872 (1996) (citing *Meridian Oil and Gas Enterprises, Inc. v. Penn Central Corp.*, 418 Pa.Super. 231, 240, 614 A.2d 246, 250 (1992)).

[7]      As pointed out by Badaracco-Apolito*, Miller* actually states that "that an unexcused violation of the Dog Law is negligence per se." 302 Pa. Super. at 244. And the court in *Shaffer* relies on *Folino v. Young*, 523 Pa. 532, 537, 568 A.2d 171, 173-74 (1990), which states "that convictions for summary offenses by themselves, where an accused is not entitled to a jury trial, are inadmissible" as proof of negligence in a civil suit. 543 Pa. at 529. Therefore, *Shafer* does not stand for the proposition that Badaracco-Apolito's summary convictions for violations of the Dog Law collaterally estop her from asserting a defense to the claims against her. *See also Toolan ex rel. Toolan v. Cerulli*, 2006 WL 4642834, 81 Pa. D. & C.4th 225, 232 (Pa. Com. Pl. Dec. 14, 2006) ("violation of the Dog Law, . . . as a summary offense only.. . .  is inadmissible for collateral estoppel purposes")

"to protect the public from personal injury, property damage, and other hazards created by roving dogs." *Deardorff*, 606 A.2d at 492. The Dog Law applies to Badaracco-Apolito as she admitted that she was the owner of the dogs and she was found by the magistrate to have violated sections 305(a) and 502-A of the statute.

However, as I have previously stated in ruling on the motion to dismiss, "a mere violation of the Dog Law does not establish the causation factor required for a finding of liability." *Underwood ex rel. Underwood v. Wind*, 954 A.2d 1199, 1205 (Pa. Super. Ct. 2008). Instead, "[w]here proof of negligence rests upon a violation of the Dog Law, liability does not attach unless the violation is a substantial factor in bringing about the injuries sustained." *Miller*, 448 A.2d at 619. "Whether a party's conduct has been a substantial factor in causing injury to another is ordinarily a question of fact for the jury, and may be removed from the jury's consideration only where it is clear that reasonable minds cannot differ on the issue." *Mangino v. Cowher*, No. 11194 OF 2008, 2010 WL 3923581 (Pa. Com. Pl. June 11, 2010) (quoting *Vernon v. Stash*, 367 Pa. Super. 36, 46, 532 A.2d 441, 446 (1987)). Only "an unexcused violation of the Dog Law is negligence *per se*." *Miller*, 448 A.2d at 618-19; *see also Villaume,* 550 A.2d at 795.

Additionally, "convictions for summary offenses by themselves, where an accused is not entitled to a jury trial, are inadmissible" for collateral estoppel purposes in a subsequent civil suit. *Folino v. Young*, 568 A.2d 171, 173-74 (Pa. 1990). The Dog Law provides that a violation of section 305 is a summary offense. *See* 3 Pa. C.S. § 459-903.[8] Although it is undisputed that Badaracco-Apolito was convicted of violating this section, that does not, in and of itself, amount to liability. If the jury finds a violation of the Dog Law, as the basis for the duty and breach of a duty for negligence *per se*, they must then determine whether the

[8] **"(b) Criminal penalties.--**Unless otherwise provided under this act, a person who violates a provision of Articles II through VII or a rule or regulation adopted or order issued under this act commits the following:

(1) For the first offense, a summary offense and shall, upon conviction, be sentenced for each offense to pay a fine of not less than $100 nor more than $500 or to imprisonment for not more than 90 days, or both."

3 Pa. D. Ann. § 459-903 (West).

violation was a substantial factor in bringing about the injury sustained. Badaracco-Apolito argues that Hughes has not established any facts to show that the violations were in fact "unexcused violations" (Doc. 61, 7.)  I agree. It is true that Badaracco-Apolito's dogs were not confined to her premises, however, it a question of material fact whether Badaracco-Apolito's actions or inactions were a substantial factor in Hughes's injuries or whether her violation of the Dog law was excused. Hughes has failed to demonstrate as a matter of law that he is entitled to judgment on this claim.

Turning to section 502-A, while it "clearly defines harboring a dangerous dog as a violation of the Dog Law, . . .as a summary offense only . . . .  it is inadmissible for collateral estoppel purposes." *Toolan ex rel. Toolan v. Cerulli*, 2006 WL 4642834, 81 Pa. D. & C. 4th 225, 232 (Pa. Ct. Com. Pl. Monroe Cnty. Dec. 14, 2006). Badaracco-Apolito is not collaterally estopped from asserting a defense to Hughes's claim. Section 502-A has, however, been deemed "an appropriate standard for determining whether a person has complied with the common-law duty to exercise ordinary care, and a violation of said statute constitutes negligence per se." *Rosen ex rel. Rosen v. Tate*, 64 Pa. D. & C.4th 524, 530-31 (Com. Pl. 2003); *see also Mangino*, 2010 WL 3923581 (allowing plaintiffs to demonstrate prima facie evidence of negligence *per se* based on a purported violation of section 502-A and where evidence was presented that dog had pursued the plaintiff and attempted to pursue others on different occasions); *Harrison v. Haueisen*, 2015 WL 1958384 (Pa. Com. Pl. April 2, 2015); *but see Kormos v. Urban*, No. GD 03-25548, 2005 WL 3970805, at *3 (Pa. Com. Pl. Sept. 15, 2005) *aff'd*, 911 A.2d 193 (Pa. Super. Ct. 2006) (stating that the text of section 502-A "itself reveals that it was not meant to be the basis of a civil lawsuit"). But a violation, in and of itself is not enough. The court in *Rosen* noted that:

> the statutory language does not provide that a single incident of attacking a human being proves a propensity to attack, only that it *may* prove such propensity. It appears that a plaintiff may prove a cause of action by establishing the facts of a single incident, but a defendant will have the opportunity, and burden, of proving that such incident does not rise to a determination of a "propensity" to attack. It is axiomatic that such determination will be left for the trier of fact.

11

*Rosen*, 64 Pa. D. & C.4th at 531-32. In order to demonstrate that the violation of section 502-A was a substantial factor in the bringing about the injuries complained of, liability for negligence *per se* must be based on "an owner's knowledge of his dog's viciousness and his failure then to take proper steps to prevent that viciousness displaying itself to the hurt of human beings." *Deardoff*, 414 Pa. Super. at 50 (citing *Andrews*, 324 Pa. at 459-60.). Hughes must demonstrate that Badaracco-Apolito's dogs had vicious or dangerous propensities and that she was aware of those propensities and that she failed to take adequate precautionary measures. Badaracco-Apolito is not collaterally estopped from asserting a defense to Hughes's claims and Hughes is not entitled to judgment as a matter of law on his claim of negligence *per se* based on Badaracco-Apolito's after-the-fact conviction for harboring a dangerous dog. Under the standard for negligence *per se,* there remains a question of material fact with regard to whether the violation of 502-A was a substantial factor in bringing about Hughes's injuries.

Count I of Hughes's Amended Complaint sets forth a claim of common law negligence against Badaracco-Apolito and Barner. (Doc. 14) Although Hughes fails, for the most part, to address why he is entitled to summary judgment on his common law negligence claim against Badaracco-Apolito, it appears he rests his contention on the Dog Law violations. "A party may rely on common-law principles, in addition to statutory violations, to establish liability." *Mangino*, 2010 WL 3923581 (citing *Deardorff*, 606 A.2d at 493). A common law negligence claim requires the plaintiff to demonstrate the following elements:

> (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) the defendant's failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff.

*Mangino*, 2010 WL 3923581 at *442 (quoting *McMahon v. Pleasant Valley West Association*, 952 A.2d 731, 735 (Pa. Commw. 2008)). As stated above, Hughes cannot rely solely on a conviction for failing to properly confine a dog or harboring a dangerous dog.

Hughes claims Badaracco-Apolito was negligent because she failed to keep her dogs confined to her premises. "A dog owner may always show that his or her dog escaped

despite the exercise of due care. In such cases, the roving of the dog would not constitute negligence." *Mangino.* 2010 WL 3923581 at *433 (quoting *Miller*, 302 Pa. Super. at 244 n.8, 448 A.2d at 619 n.8.) "Whether an owner exercised due care despite the dog's escape is also a question for the trier of fact in certain circumstances." *Id.* Badarracco-Apolito can present a defense to the charge that the dogs were not properly confined by attempting to show that this happened despite her exercise of due care. *Underwood*, 954 A. 2d at 1205.

Additionally, Pennsylvania law provides that "that the owner of a dog is not responsible for the consequences of his dog's actions if he has no reason to know of the viciousness or dangerous propensities of the dog beforehand." *Fenlon v. James*, No. 2800 CIVIL 2006, 2008 WL 6478565 (Pa. Com. Pl. Sept. 19, 2008) (citing *Snyder v. Milton Auto Parts Inc.*, 285 Pa. Super. 559, 428 A.2d 186 (1981)). "A reasonable jury need only be able to arrive at reasonable inferences that the animal was likely to commit the act of the kind complained of." *Fenlon v. James*, No. 2800 CIVIL 2006, 2008 WL 6478565 (Pa. Com. Pl. Sept. 19, 2008) (citing *Andrews v. Smith*, 324 Pa. 455, 188 A. 146 (1936)). An owner cannot be held liable for injuries caused by his or her dog "unless the owner had knowledge of the animal's dangerous propensities and failed to take proper steps to prevent the animal from harming people." *Mangino*, 2010 WL 3923581 at *442 (*citing Andrews*, 324 Pa. at 458.). Hughes's reliance on Badaracco-Apolito's Dog Law violations alone does not demonstrate as a matter of law that Badaracco-Apolito's dogs had dangerous or vicious propensities that she was aware of and, if so, that she failed to take adequate precautions to prevent them from harming people. Therefore, the jury must determine if Badaracco-Apolito's dogs exhibited dangerous or vicious propensities, and if so, if she took sufficient precautionary steps, or failed to exercise due care. *See Mangino,* 2010 WL 3923581. Hughes's motion with regard to Badaracco-Apolito will be denied.

Badaracco-Apolito also argues that "[e]ven if it is found that Defendant Badaracco-Apolito was aware of her dogs' vicious propensities–which is hereby strictly denied–it can be found as a matter of law that she took the proper precautions to preclude her dogs from

acting in a vicious manner thereby negating negligence and liability." (Doc. 61, 6.) Because this argument also serves as one of the bases for her motion for summary judgment, it is addressed in Section C *infra*.

2.   **Barner**

Hughes contends he is entitled to summary judgment on his claim against Barner with regard to negligence/factual cause. Hughes argues that because Barner was told by Badaracco-Apolito that the dogs were not to be let out of the house without leashes, but because he let them out of the house without leashes on February 17, 2013, there is no question that he was negligent.  (Doc. 51, 11-12.) Hughes also contends that Barner was the "keeper" of the dogs on February 17, 2013, and therefore, even if not charged with violating the Dog Law, he is nevertheless negligent *per se* because he "failed to keep the dogs 'confined within the premises of the owner'. . . " and "as the keeper was harboring dangerous dogs with a propensity to attack (as found by the magistrate)." (Doc. 51, 11.) Hughes also asserts that because his injuries are undisputed he is entitled to judgment as a matter of law. (*Id.* at 11-12.)

Barner first contests Hughes's motion by stating that genuine issues of material fact remain because there is no evidence that Badaracco-Apolito's dogs ever exhibited any vicious propensities and therefore, he may be able to raise a meritorious defense to the negligence claim. *See Toolan ex rel. Toolan v. Cerulli*, 2006 WL 4642834, 81 Pa. D. & C. 4th 225, 233 (Pa. Ct. Com. Pl. Monroe Cnty. Dec. 14, 2006) (stating an example of a meritorious defense "where it is asserted that plaintiff's injury is not the result of defendant's negligence, and that the injuries complained of occurred as a result of an unforeseeable event.")

In response to Hughes's contention that Barner was the "keeper" of the dogs and thereby violated the Dog Law (Doc. 51, 11.),  Barner argues that Hughes fails to allege a claim of negligence *per se* against him and cannot now do so through a motion for summary judgment because the statute of limitations has run and Hughes is now unable to amend his complaint to allege a violation of the Dog Law against Barner (Doc 60, 8.). In the

14

alternative, Barner argues that Hughes has not provided any "support that the term 'keeper' was intended to include a mere houseguest of a dog owner when the dog owner is on the premises where the dogs were located at the time of the incident." (Doc. 60, 9.) Notwithstanding, Barner states that Hughes would still have to prove the elements of the provision of the Dog Law that Hughes contends Barner violated. (*Id.*)

Although negligence *per se* and common law negligence "impose different standards and can lead to different outcomes," *Baker v. Mayhart*, 2012 WL 3965165 (Pa. Com. Pl. Sept. 5, 2005), the Pennsylvania Superior Court has stated that statutory requirements can be used as the standard for determining whether a person has complied with the common law duty to exercise reasonable care. *Deardorff*, 414 Pa. Super. at 52. However, "Negligence *per se* is a separate legal theory having elements and underlying rationales different from the other two theories." *McCloud v. McLaughlin*, 2003 PA Super 451, ¶ 8, 837 A.2d 541, 544 (2003). In the current case, despite Hughes's argument that Barner is negligent *per se* based on his alleged failure to comply with the Dog Law as a "keeper", the only cause of action against Barner is one for common law negligence and therefore, to prevail on his claim, Hughes must demonstrate  the elements of common law negligence against Barner and cannot rely solely on the violation of the statute. Hughes must demonstrate that he was owed a duty by Barner, Barner failed to conform to that duty, that Hughes was injured and Barner's failure to conform with his duty caused the injuries. I agree with Barner that "[i]t is an issue of fact as to whether or not Dr. Barner's decision on February 17, 2013 . . .[was] unreasonable given his knowledge of the dogs' demeanor and given his personal experience." (Doc. 60, 8.)

Because Hughes has failed to plead a negligence *per se* cause of action against Barner, he cannot now attempt to allege that because Barner was the "keeper" at the time of the incident he is now entitled to judgment as a matter of law.[9] However, "[u]nder

---

[9]

The Dog Law does not define "keeper", however, the following definition is given for an owner:

When applied to the proprietorship of a dog, includes every person having a

Pennsylvania law, landlords, dog owners, and dog keepers have a duty to ensure that their dogs do not cause injury to others." *Luberto v. Ellis*, 48 Pa. D. & C.4th 553, 557 (Com. Pl. 2000)(citing *Deardorff,* 414 Pa. Super. 45).   Because the element common "among the above mentioned groups is control over the physical presence of the dog," one cannot be liable if there is a lack of control.   *Luberto*, 48 Pa. D. & C.4th at 557; *see also Andrews v. DeStefano*, 71 Pa. D. & C.4th 497, 503 (Com. Pl. 2005). Despite Barner's contention that he is not a keeper under the Dog Law, he appears to concede he owed a duty to act reasonably when letting the dogs out. Therefore, whether he is considered a keeper under the Dog law is immaterial.

Despite the acknowledged duty, Barner argues that the matter should be left for the jury to determine if he in fact acted unreasonably under the circumstances. I agree. Because there is a question of material fact with regard to whether Barner acted unreasonably when he let the dogs out without leashes on February 17, 2013 based on the evidence of record that he took the dogs out on February 16, 2013 without leashes and without incident, I will deny Hughes's motion for summary judgment on this claim.

Finally, Barner argues that summary judgment is inappropriate because disputed issues of fact remain regarding causation and Hughes's comparative negligence. (Doc. 60, 9.) Barner cites evidence of record that Hughes attempted to distract the German Shepherds and lead them away from his own dog and asserts that the "testimony of the witnesses established that the dogs' attention and attack was focused solely on another dog. It was not until Mr. Hughes interceded by intentionally drawing attention from [his dog] onto himself that the dogs engaged a human being." (Doc. 60, 10.) Barner asserts such testimony bears on whether Hughes assumed the risk of being hurt by the dogs. (Doc. 60, 10-11.) Ms. Xargay did testify that Hughes may have "yelled at [the German Shepherds] and waived his arms in an attention-grabbing manner, but not in an aggressive way,"

---

right of property in such dog, and every person who keeps or harbors such dog or has it in his care, and every person who permits such dog to remain on or about any premises occupied by him.
3 P. S. § 459-102. Hughes fails to cite any case law to demonstrate that Barner should be considered a keeper under the statute.

successfully gaining "the attention of the dogs" and "they chased after him, away from [the family]." (Doc. 63, 3-4; Doc. 64, 6.) Therefore, because Pennsylvania case law permits the defense of assumption of the risk for dog bite cases, *Allen v. Tanchuk*, No. 11005 OF 2007, 2009 WL 6477035 (Pa. Com. Pl. Nov. 10, 2009) (citing *Groner v. Hedrick*, 403 Pa. 148, 153, 169 A.2d 302, 304 (1961), the issue of causation remains in dispute

### C.    Badaracco-Apolito's Motion for Summary Judgment

Badaracco-Apolito requests summary judgment on Hughes's claims against her. (Doc. 56) Both Hughes and Barner oppose her request. (Docs. 65-66) Badaracco-Apolito contends she is entitled to judgment as a matter of law on both the negligence and negligence *per se* claims because she acted reasonably, took proper precautions and had it not been for the acts of Barner, the dogs would have remained securely in the house. (Doc. 58, 5.) Additionally, she argues she cannot be held strictly liable based on Dog Law violations and because she acted reasonably and, as it was not her actions or inactions that caused injuries, she cannot be deemed negligent per se. (*Id.* at 8.)

Hughes counters Badaracco-Apolito's motion first by arguing that I cannot grant summary judgment in her favor based on her oral testimony alone. Hughes cites to several cases and asserts that the "Pennsylvania Supreme Court and Third District held that sole reliance on the moving party's testimony in a request for summary judgment cannot provide the basis for providing that an issue of material fact does not exist . . ."[10] (Doc. 66, 5.) Magistrate Judge Carlson recently considered a similar argument that a motion for summary judgment can not be supported solely with witness statements and stated the following in rejecting the argument:

> Whatever effect the *Nanty–Glo*[11] rule may have on state practice, reliance on this rule is misplaced in the instant federal case, as courts in this circuit have consistently found that this state-law procedural rule has no application to

[10]     I will note, without further discussion, that the cases cited by Hughes do not support his position.

[11]     *Borough of Nanty-Glo v. Am. Surety Co.*, 309 Pa. 136, 163 A. 523 (Pa. 1932).

motions for summary judgment in federal court. *See, e.g., Schmitt v. State Farm Ins. Co.,* Civ. A. No. 09–1517, 2011 WL 4368400, at *13 (W.D.Pa. Aug.12, 2011) ("Nanty–Glo is inapplicable to summary judgment motions in federal court."); *NGM Ins. Co. v. Stoltzfus Const., LLC,* Civ. A. No. 09–CV–01717, 2011 WL 397667, at *5 (M.D.Pa. Jan.10, 2011); *Tarlecki v. Mercy Fitzgerald Hosp.,* Civ. A. No. 01–1347, 2002 WL 1565568, at *1 n. 1 (E.D.Pa. July 15, 2002). Indeed, it is well-settled that the court may rely upon testimonial evidence in reaching a decision on a summary judgment motion. *See Waskovich v. Morgano,* 2 F.3d 1292 (3d Cir.1993). Moreover, Rule 56 plainly contemplates the sue [sic] of testimonial evidence in support of a summary judgment motion. *See* Fed.R.Civ.P. 56(c). Therefore, in resolving this motion we can, and must, consider what the undisputed testimonial evidence shows.

*Seeley ex rel. Shepard v. Derr,* No. 4:12-CV-917, 2013 WL 3776424, at *3 (M.D. Pa. July 17, 2013); *see also Morello v. Kenco Toyota Lift,* No. CIV.A. 09--4412, 2015 WL 1400582, at *3 (E.D. Pa. Mar. 26, 2015) ("a motion for summary judgment can be granted based on uncontradicted self-serving testimony of a moving party's witness."). Therefore, Hughes's first argument is without merit.

Secondly, Hughes, while acknowledging that Badaracco-Apolito cannot be held strictly liable, states that based on Badaracco-Apolito's violations of the Dog Law, it is for the jury to decide whether her purported failures to properly confine and to safely harbor dangerous dogs was a substantial factor in bringing about the injuries. (Doc. 66, 6.) Finally, Hughes argues that there are a number of reasons why Badaracco-Apolito's actions or inactions "may be considered a factual cause of the attack." (*Id.*) Those purported actions or inactions can be summarized as the following: failure to inform Barner of the dogs' history of barking at other dogs and people; never expressing concerns to Barner about either dog being at risk for aggressive behavior or expressing why she wanted the dogs on leashes; failing to reprimand Barner for letting the dogs out the night before the subject incident without leashes; leaving her dogs alone with Barner at a time when the dogs would need to go out, expecting Barner to do it, without reminding him to use leashes; and finally, the way the dogs attacked Hughes could lead a jury to conclude Badaracco-Apolito knew of their propensity for attacks and her failure to inform Barner of such. (*Id.* at 6-8.) Hughes also cites to what he alleges was Badaracco-Apolito's duty to ensure that the person she

entrusted to walk her dogs was capable of controlling them as well as her failure to enclose her property with invisible fencing. (*Id.* at 8.)

Barner's opposition mirrors that of Hughes's and argues that the question of whether Badaracco-Apolito's actions were reasonable is a question to be left to the jury. (Doc. 65) Barner states that Badaracco-Apolito had knowledge of the male dog's propensity for aggressive behavior and failed to provide Barner with her reasoning why the dogs were to be kept on leashes. (*Id.* at 6.) Barner also argues that the dogs were not always kept on leashes and that she had a duty to tell Barner that he was not to take the dogs out without leashes again following his doing so on the night before the subject incident. (*Id.* at 6-7.) Finally, Barner argues that Badaracco-Apolito should have installed invisible fencing. (*Id.* at 7.) To summarize, Barner argues Badaracco-Apolito failed to make all reasonable efforts to ensure her dogs were contained and controlled as required by Pennsylvania law. (*Id.* at 8.)

In response, Badaracco-Apolito states that both Hughes and Barner are attempting to create material issues of fact when there are none (Docs. 67-68) by making multiple misstatements and mischaracterizing her testimony. (Doc. 67, 1; Doc. 68, 1.) Although several assertions of Hughes and Barner lack support in the cited record, both address whether Badaracco-Apolito knew that Barner took the dogs out without leashes on February 16, 2013 and whether her actions or inactions in response were reasonable. It is clear the dogs were let out of the house by Barner on both February 16 and 17, 2013. It is not clear whether or not Badaracco-Apolito knew that Barner took the dogs out of the house without leashes on February 16, 2013. When asked if Badaracco-Apolito knew that he took the dogs out on February 16, 2013 without leashes, Barner stated that he had not told her that he had and he did not know if she knew. (Doc. 51, 46.) Barner also did not remember if Badaracco-Apolito asked him to let the dogs out on February 17, 2013 stating "it was either because she asked me or I perceived that it was appropriate for them to go out and do their morning business." (Doc. 51, 49.) Badaracco-Apolito stated that after Barner had taken the dogs out on February 16, 2013, he stated to her "you don't trust your dogs enough." (Doc.

19

51, 23.) She does not recall, however, if Barner told her that he had taken the leashes off the dogs while he had each one out but may have done that." (*Id.*) Badaracco-Apolito responded to his comment by looking at him, said nothing and testified that "He should have understood my look." (*Id.*) She denied knowing that the dogs were not on leashes on February 16, 2013, although had a suspicion, and did not confirm that he had done so. (Doc. 51, 24.) Further, Badaracco-Apolito stated she did not ask Barner to take the dogs on out on February 17, 2013, and they never discussed the issue as she was in her bedroom and bathroom getting ready. (Doc. 51, 25.)

As to the common law negligence claim against Badaracco-Apolito, although I agree with Badaracco-Apolito that the opposition presents her testimony in a way that fails to take into consideration the context of the statements or fails to cite to support in the record, I do not believe that summary judgment is appropriate on her behalf on Hughes's negligence claim. There is a question whether  Badaracco-Apolito breached her duty as a dog owner. It is undisputed that Barner let the dogs out, but viewing the evidence in the light most favorable to the non-movants, Badaracco-Apolito herself suggested that she wished she had said more on February 16, 2013. (Doc. 51, 24.) Because my responsibility is not to determine the reasonableness of the actions or inactions taken by Badaracco-Apolito, and there is a question regarding that reasonableness of Badaracco-Apolito's actions or inactions as to the control of her dogs based on the evidence of record,  this determination is best left to the jury.

Badaracco-Apolito will have the opportunity to present her defense to the jury that it was Barner's actions, and not hers, that caused injury, however, viewing the evidence in the light most favorable to Hughes and Barner as non-movants, a reasonable jury may conclude that Badaracco-Apolito failed to act reasonably and to take proper precautions to ensure that her dogs remained confined on her property and such was the cause of Hughes's injuries.

Turning to Hughes's claims of negligence *per se* against Badaracco-Apolito, Badaracco-Apolito argues that she is entitled to summary judgment based on her assertion

20

that she "exhibited reasonable care in keeping her dogs confined to her premises or within the control of her person" and therefore, "cannot be negligent *per se*." (Doc. 58, 8.)

Hughes alleges Badaracco-Apolito's violation of two (2) sections of the Pennsylvania Dog Law as the basis for Badaracco-Apolito's purported *per se* negligence. It is undisputed that Badaracco-Apolito was found to be in violation by the magistrate of failing to properly confine her dogs under section 305(a) and for harboring a dangerous dog under section 502-A. As stated, the violations alone do not amount to liability but must have been a substantial factor in the resulting injuries. In support of her position, Badaracco-Apolito cites to *Villaume v. Kaufman*, 379 Pa. Super. 561 (1988). In *Villaume*, the Pennsylvania Superior Court reversed the trial court's grant of the plaintiff's motion for judgment notwithstanding the verdict after the jury decided the case in favor of defendants. 379 Pa. Super. at 563. The plaintiff sought to impose liability on the defendants through violation of section 305(a) of the Dog Law after defendants' dog entered the plaintiff's property and attacked her. *Id.* There was evidence presented that, unbeknownst to defendants, the dog had possibly broken his chain. *Id.* at 565. The jury declined to impose liability on the defendants presumably based on either their determination that there was no violation of the Dog Law or that such a violation was  not a substantial factor in the plaintiff's injuries. *Id.* at 566. Badaracco-Apolito urges that this case does not need to go to the jury because it is undisputed that Barner was the one who let the dogs out. (Doc. 58, 7.) However, there is evidence in this case that Badaracco-Apolito was found to have violated section 305(a). Whether this violation on Badaracco-Apolito's behalf as owner of the dogs was a substantial factor in bringing about Hughes's injury is a question best left to the jury.

Turning to section 502-A of the Dog Law, it is also undisputed that Badaracco-Apolitio was found guilty of harboring a dangerous dog. However, as stated, to establish liability it must be demonstrated that Badaracco-Apolito's dog or dogs had dangerous or vicious propensities, and she was aware of those propensities. An owner cannot be held liable for injuries caused by their dog when they had no awareness of any tendency on the part of the dog to act in a vicious or dangerous manner. The evidence of record undisputably

21

shows that neither dog had previously bitten anyone, nor, to the knowledge of Badaracco-Apolito or Barner, jumped or growled. (Doc. 51, 21; 44.) The male dog, Poco, was described as "feisty" and "he would tend to bark and sometimes pull." (Doc. 51, 19.) Barner testified that the male dog would bark at other people or other dogs. (Doc. 51, 51.) Although the preceding statements do not necessarily give rise to dangerous or vicious propensities, Badaracco-Apolito gave the following testimony:

> Question:"Did you ever have any concerns before February 17, 2013 that either Poco or Montie might attack another person or another dog?"

> Answer: "Never Montie. Poco, I didn't know. I don't know but I don't think I thought that he could, I am not sure."

(Doc. 51, 29.) Therefore, viewing the evidence in the light most favorable to the non-movants, there is a question whether Badaracco-Apolito knew of any dangerous or vicious propensities of her dog Poco. Additionally, the fact that Badaracco-Apolito was found guilty of harboring a dangerous dog, can demonstrate that a dog exhibited vicious or dangerous propensities because "courts have determined that the propensity to attack may be proven by a single incident, even if it is only the first attack." *Mangino*, 2010 WL 3923581 (citing *Underwood,* 954 A.2d at 1205 ; *Commonwealth v. Hake*, 738 A.2d 46, 50 (Pa. Commw. 1999); *Rosen,* 64 Pa. D. & C.4th 524). Because it is best left to the jury to determine if Badaracco-Apolito knew of any vicious or dangerous propensities in her dogs and if she exhibited reasonable care as the dogs' owner, her motion for summary judgement will be denied.

### III. Conclusion

For the above stated reasons, I will deny both Hughes's and Badaracco-Apolito's motions for summary judgment.

An appropriate order follows.

February 29, 2016                                      /s/ A. Richard Caputo
Date                                                           A. Richard Caputo
                                                                  District Court Judge

22